**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4651-16T4

U.S. BANK NA, Successor Trustee
to Bank of America, NA, Successor
in Interest to LaSalle Bank NA, as
Trustee, on Behalf of the Holders
of the WAMU Mortgage Pass-Through
Certificates, Series 2006-AR9,

 Plaintiff-Respondent,

v.

EDWARD G. PETRAGLIA,

 Defendant-Appellant,

and

MRS. EDWARD G. PETRAGLIA,
his wife, UNITED STATES OF
AMERICA, and STATE OF NEW
JERSEY,

 Defendants.

_____

Submitted January 16, 2019 - Decided March 27, 2019

Before Judges Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-010688-15.

Denbeaux & Denbeaux, attorneys for appellant (Joshua W. Denbeaux, on the brief).

Parker Ibrahim & Berg, LLP, attorneys for respondent U.S. Bank, N.A. (Scott W. Parker and Daniel A. Schleifstein, on the brief).

Flowers & O'Brien, LLC, attorneys for respondents Gregory J. Tencza and 314 Atlantic Avenue – Spring Lake, LLC (W. Mark O'Brien and Michele A. Daitz, of counsel and on the brief).

PER CURIAM

In this residential mortgage foreclosure, defendant Edward G. Petraglia appeals from a May 30, 2017 order denying his application to vacate a sheriff's sale and restrain delivery of the deed to the purchaser, intervenor Gregory J. Tencza. Defendant argues the issuance of a reinstatement quote by plaintiff U.S. Bank, N.A.'s servicer to him in the days before the sale constituted a binding settlement agreement enforceable under GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 176 (2017). We disagree and affirm.

Defendant borrowed $1,260,000 from Washington Mutual Bank, F.A. in June 2006, secured by a thirty-year non-purchase-money mortgage on his home

2

in Spring Lake. The note went into default in January 2009 for non-payment. Several months later, the mortgage was assigned to plaintiff.

No further payments were ever made and plaintiff filed a foreclosure complaint in March 2015. Defendant never appeared in the action, and final judgment was entered in August 2016. Plaintiff obtained a writ of execution and scheduled a sheriff's sale for March 6, 2017. After exercising his two statutory adjournments, defendant moved to vacate the final judgment and further stay the sale.

The General Equity judge entered an order on March 27, further adjourning the sale to May 8 to permit briefing and argument on the motion, while noting the parties were free to "consider reinstat[ing] [the] mortgage." The judge denied the motion to vacate the judgment on April 28.

On Monday, May 1, one week before the sheriff's sale, defendant's counsel wrote to plaintiff's counsel proposing a forbearance agreement based on an immediate payment of $50,000 and monthly payments of $11,000 with the remaining balance to reinstate to be paid no later than April 30, 2018.[1]

---

[1] Plaintiff's counsel filed a certification in the trial court averring plaintiff had already rejected a similar offer on April 7, 2017 and again on April 28, 2017, and he had advised defendant's counsel the bank was only interested in immediate reinstatement or a payoff of the entire balance due.

Defendant's counsel wrote a second letter that same day asking that the servicer provide an updated reinstatement quote good through that Friday.[2] In that letter, defendant's counsel stated

> [d]efendant advises me that it is his intention to deposit an amount sufficient to pay the Reinstatement Quote in my office trust account so that it is received and available no later than Thursday, May 4, 2017. We will provide proof of funds upon receipt of the deposit of the funds.

The letter continued:

> Please also confirm that if we can provide proof of funds in my trust account for an amount sufficient to reinstate and [the servicer] is unable, due to the limitations of time, to provide the reinstatement quote requested, that the Plaintiff will agree to adjourn the Sheriff's Sale for a period of two (2) weeks. It is understood that this request would require my office to confirm the funds in place or provide other satisfactory proof that funds are held.

On Wednesday, May 3, defendant telephoned the servicer directly requesting a payoff figure and assistance in expediting the updated reinstatement quote. Defendant followed up his call with an email that he be provided, "if possible," with "a quote with a 'good to date' at least until 5:00 p.m. Friday 5 May 2017."

---

[2] Plaintiff's servicer had on or about March 28 provided defendant a reinstatement quote good through April 14 of $608,420.25.

Plaintiff's servicer responded with a letter dated Thursday, May 4, but not telefaxed to defendant until the morning of May 5, advising he could "cure the delinquency by paying the total Reinstatement Amount" of $615,206.20 by the "Reinstatement Good to Date" of May 4, by 5:00 p.m. The letter stated that "[i]ssuance of this Reinstatement Quote does not constitute an agreement by [the servicer] to suspend pending or future legal action." It further advised defendant that if he was unable to pay the total reinstatement amount on or before the "Good to Date," he must contact the servicer for an updated reinstatement quote prior to remitting payment. Finally, the letter warned that the servicer "reserve[d] the right to either reject or apply funds received after the expiration of this Reinstatement Quote, and, if insufficient to fully reinstate, [the servicer] may elect to apply the funds to your account." On Friday, May 5, the servicer's ombudsman emailed a message to defendant extending the term of the "Good to Date" to 2:00 p.m. of that same day. The email further stated that "[p]roof of funding, for the entire amount is required in order to consider any reinstatement."

On Monday morning, May 8, defendant's counsel appeared before the General Equity judge seeking to stay the sheriff's sale scheduled for that afternoon for an additional thirty days. Counsel asserted that "[d]efendant had

5

assistance to reinstate [the] mortgage prior to this date but received [the] reinstatement quote on Friday and did not have sufficient time to make arrangements for payment." In support of the application he presented two letters, one from an investor saying it would not be able to assist in transferring the sums necessary "to [defendant's] attorney or to any third party, such as [defendant's] lender, absent clear documents," and the other from a cousin of defendant's representing he could provide proof of funds necessary to reinstate within one or two days, with funds to be transmitted by the end of the week if necessary. The judge denied the motion and the sheriff's sale of defendant's home went forward as scheduled and was sold to intervenor as the highest bidder.

Defendant, with new counsel, filed an application for an order to show cause with temporary restraints seeking to restrain the sheriff's delivery of the deed and set aside the sale in order to permit defendant the opportunity to reinstate the mortgage. Defendant's counsel argued the parties had agreed to settle the matter by permitting defendant to reinstate in accordance with a reinstatement letter plaintiff's servicer agreed to supply. He claimed defendant had sufficient funds to allow reinstatement by the Friday, May 5 at 5:00 p.m. deadline and would have tendered the funds by that date but for defendant's

6

clerical error of including an already expired "Good to Date" coupled with the warning that funds submitted after that date could be applied to the account without reinstatement. Counsel further argued that plaintiff's insistence on proof of funds was a new term not previously a part of their agreement. Defendant maintained plaintiff's failure to provide a reinstatement quote as previously agreed breached the parties' contract entitling him to set aside the sheriff's sale.

The General Equity judge denied the motion, finding there was no obligation for plaintiff to provide defendant with an opportunity to reinstate after entry of judgment. Notwithstanding, the bank had done so on more than one occasion and defendant had never tendered the funds nor demonstrated the ability to do so. Acknowledging that the bank tendering a reinstatement quote with a deadline that had already passed "certainly is improper," the judge found "proof of funding was always necessary" and never provided by defendant. The judge found there was no enforceable contract between the parties, no reason to stay the sale and no reason to stay transfer of the deed to the third-party purchaser.

The judge denied defendant's application to stay her decision pending appeal. We likewise denied defendant's application to file an emergent motion to stay the deed transfer and subsequently denied defendant's emergent

7

application to stay his ejectment pending appeal, finding no reasonable probability of success on the merits under <u>Willoughby</u>. Specifically, we noted that unlike in <u>Willoughby</u>, "there is no mutually executed loan modification agreement. The May 4, 2017 correspondence from the mortgage servicer specifies that 'Issuance of this Reinstatement Quote does not constitute an agreement . . . to suspend pending or future legal action . . . [.]'" Defendant's request for emergent relief in the Supreme Court was denied by a single justice.

Defendant appeals, reprising the arguments he made in the trial court that the parties entered into a settlement contract to cure the default and end the foreclosure. Having now reviewed the entire record, our view is unchanged from when we denied defendant's motion to stay the eviction. As our recounting of the history of this matter makes clear, the parties never agreed to allow defendant to reinstate his loan after entry of final judgment.

The correspondence between the parties establishes that plaintiff simply offered to permit defendant to reinstate if he could muster the necessary funds to do so. It also establishes that the General Equity judge was correct that proof of funding was always necessary as acknowledged by defendant's counsel in his correspondence to the bank's lawyer. The record is equally clear that defendant did not, as his attorney represented to plaintiff he intended, deposit the funds

A-4651-16T4

necessary to reinstate into his attorney's trust account by May 4 or at any time thereafter.  Because there was no settlement agreement between the parties post-judgment, <u>Willoughby</u> is not applicable here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4651-16T4